*C. H. Lee, for appellant.*

*W. J. Perrin, for appellee.*

---

MARY GLASS, ET AL. *v.* SAMUEL GLASS.

[Abstract Kentucky Law Reporter, Vol. 7—438.]

**Adverse Possession of One Tenant in Common.**

Where the rights of tenants in common or coparceners are established, and the one in the actual possession attempts to establish a hostile claim to his cotenants by reason of title in himself, the proof that notice of such claim has been brought home to his cotenants must be of a convincing character, for the possession of one tenant in common is the possession of all of them.

APPEAL FROM SCOTT CIRCUIT COURT.

December 8, 1885.

OPINION BY JUDGE PRYOR:

William Glass died in the county of Scott in the year 1866. He left at his death eight children or their representatives and was the owner of a small tract of land containing about fifty acres, upon which he resided and which is the subject of controversy in this action. His wife died long after her husband, and was entitled as doweress until the year 1874. As widow she was entitled to the possession and to the rents of the mansion house and farm until dower was assigned her. This right has been changed to the one of the mansion house and one-third of the rents by the General statutes adopted in the year 1879. Gen. Stat. 1879, ch. 52, § 8.

Samuel Glass, the appellee, claims to have made a parol agreement with his father in the year 1848, by which he was to have the farm upon his promise to support his father and mother and his younger brother and sister; that he took possession of the farm at that date and has been claiming the land since that time. James Glass, a brother, died leaving children, who are claiming the interest of their father in this land and instituted the present action to recover that interest in November, 1882. Samuel Glass in resisting the recovery relies mainly on the statutes of limitation of thirty and fifteen years, claiming to have taken possession of the farm in the year 1848. He says that the thirty-year statute is a bar, and if not, that he claimed to own the land in his own right at the death of his father, and more than fifteen years have elapsed from that date in 1866, until the institution of this action in November, 1882.

All of the children of his father, Wm. Glass, were adults at the death of their father; and therefore, if Samuel was in the possession at that time with a claim hostile to that of his brothers and sisters, the statute began to run and was not stopped by the subsequent disability of any of the claimants.

The principal question in this case is as to the character of the holding by Samuel, for if the claim was adverse and his brothers and sisters adults, or a part of them sui juris, the statute is a complete bar. The ancestor, Wm. Glass, seems to have raised a large

family of children on this small farm, and was in the vigor of manhood when this contract alleged was entered into. All of his children no doubt had claims upon his bounty, and Sam remained on the farm longer than any of the other children.

He established the existence of a parol agreement, by his own testimony and that of one other person, made as far back as the year 1848, and to this may be added the testimony of others who heard declarations made by the parties that this land was Sam's. There was a period of eighteen years from the parol contract until the death of the old man, yet no act was done by either party that would perfect the title in Sam for his own protection, or evidence the right of the father and mother to look to him for a support. He was a bachelor advanced in years at the death of the father and unmarried until a few years before this suit was instituted, and nothing was more natural than that he should live with his parents and assume the control and management of the farm.

It is certain that this claim could not have been enforced against the father, and equally as certain that such unsatisfactory testimony could not convert the holding of Sam during his father's lifetime into an adverse possession against his father and mother or those claiming under them. The inheritance will not be taken from his brothers and sisters upon the idea of an adverse holding with the father and mother in the possession, and with no other evidence of title than proof of a parol contract, the existence of which is not made to appear by any convincing testimony. It is manifest, as the sister who testified for the appellee says, that it was the father's land at his death, and no adverse claim as against the father under the circumstances will be allowed to prevail. In fact, the tax list shows that all the parties regarded the land and the stock upon it as the father's and not the son's, and, if the latter's control of the farm and his living with the family is to deprive the brothers and sisters of their patrimony, there would be but few estates where the one child remained longer with the parents than another that the same character of claim might not be asserted. The support and maintenance of the children, while unable by reason of their infancy to support themselves, was a parental duty, and the support and maintenance of the parents was a natural duty resting upon the child; and while the appellee may have been more affectionate than others of the family there is but

little doubt that each of the children contributed to the support of the parents as long as they remained with them. The tax lists show that the ancestor owned slaves and personalty amounting at one time to $4,000 or $5,000; that the appellee had accumulated means sufficient to purchase land of his own valued at $700 or $800 during the period he lived with his father. From the products of this small farm William Glass had raised a large family, and when Samuel took possession it is now argued that it was not sufficient to support the parents. We are satisfied that the land belonged to the father at his death, and if he intended to give it to Samuel he failed to do so, and the possession by the appellee at the death of his father was the possession of all the coparceners.

The possession in fact passed to the widow who was entitled to the rents until her death in 1874. She remained with her son until 1869, leaving a party in possession who was entitled only as an heir to his just proportion of the realty. After the death of the father, the inheritance being small, we can well see how or why the heirs should not demand a division; but after the death of the mother, and perhaps before the children were asserting a claim to an interest in the land, the appellee paid to one sister the full value of her interest. He paid to a brother a sum exceeding $100 and offered to pay for other interests, but not as much as the parties claimed and this alone prevented the purchase of their interests. In 1874, James Glass, the father of these children, had instituted an action for his interest in the land. This action was dismissed, and its dismissal resulted from the promise made by the appellee to his brother, James, to pay him for his interest. This fact is established by the widow of James and is not denied by the appellee. That the action was instituted as soon as the mother died is evident, and then dismissed. Some reason existed for its dismissal, and the statement of the widow as to what took place between the two brothers is perfectly consistent with all the facts of this case. The appellee was never in a condition to assert any open or hostile claim against these children until the death of the mother. They all held as coparceners, except the mother, who was entitled to dower and to the possession and rents of the entire place. The child and heir with her on the place could not be holding against her, nor could he claim to hold as against his brothers and sisters until dower was allotted, be-

cause he could not well say what part of the land he was asserting claim to.

That one joint tenant in possession may, by an open and notorious claim of which his cotenants are informed, convert that possession into a hostile claim is evident; but this case shows no notorious holding adverse to these children or to their father, but on the contrary their claim when asserted is recognized, if for no other purpose than to prevent a law suit. The statute never began to run until 1874; but if it had begun to run in 1869, when the mother left for Missouri, it was not fifteen years from that date until this suit was instituted. It may be regarded as the law that where the rights of the joint tenants or coparceners are established, and the one in the actual possession attempts to establish a hostile claim to his cotenants or coparceners by reason of title in himself, the proof that notice of such claim has been brought home to his cotenants must be of a convincing character. Such a notice is not established in this action, and would not be regarded if established, for the reason that the statute did not begin to run until 1874, and certainly not until 1869, when the widow of William Glass left the farm.

It is not contended that the claim of the appellee for maintaining his father and mother can now be presented after the lapse of sixteen years from the death of the father and eight years from the death of the mother. The action would be against the personal representative of his father if instituted, and the statute of five years would bar the action; and besides the father and mother were supported out of their own estate, and the fact that the son contributed to their support by his labor on the farm is set off by the support and profits that he himself realized from the farm. He has had the use of and the possession for the purpose of cultivation since 1866, a period of sixteen years, to the date of this action, which more than compensated him for his labor and expenditures. He has rebuilt his home on the farm that had burned down and has improved the land. Under the circumstances he should be charged with the rents due these appellants from the time of filing this action, and their share of the land should be allotted to them, if a division can be had without impairing the value of the entire tract; and if the division is impracticable the land should be sold and the proceeds divided. We think from the proof that the equities of this case would entitle the appellants to rents from the institution of the action, and

no charge be made for improvements. As to the claim of the wife of the appellee it can not be asserted as against the appellants because her husband, from whom her title is derived, never was invested with the title of these appellants. Judgment *reversed* and remanded for proceedings consistent with this opinion.

Geo. E. Prewitt, John L. Scott, M. L. Stevenson, for appellants.
Owen & Finnel, for appellee.